IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**JUANITA GARCIA,**

      **Plaintiff,**

**v.**                                                                                               **CIV No. 12-0383 LH/RHS**

**THE CITY OF FARMINGTON,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Memorandum Motion to Dismiss Plaintiff's Sex Discrimination and Retaliation Claims (Docket No. 12). The City of Farmington ("the City") asserts that, because Plaintiff Juanita Garcia ("Garcia") failed to include adequate factual allegations in her Equal Employment Opportunity Commission ("EEOC") charge with regard to Counts II-IV (gender discrimination via hostile work environment (Count II); retaliation (Count III); and, retaliation via hostile work environment (Count IV)), these three claims in her Complaint must be dismissed due to a lack of subject matter jurisdiction of this Court.[1] Having considered the motion, the response and reply briefs, as well as applicable caselaw, the Court concludes that the motion will be **denied.**

---

[1] The City does not seek dismissal of Count I (gender discrimination/failure to promote) in its motion, nor does it seek dismissal of Count V, a claim under New Mexico common law for prima facie tort.

    Furthermore, the Court notes that, on May 1, 2013, Garcia filed a First Amended Complaint (Docket No. 31). This pleading was filed many months after the Answer was filed, and without consent of Defendant or leave of

1

**Motion to Dismiss Legal Standards**

The City's motion is brought pursuant to Rule of Civil Procedure 12(b)(1), based on a lack of subject matter jurisdiction. At issue is whether or not Garcia has exhausted her administrative remedies, a statutory and jurisdictional prerequisite to her bringing claims of employment discrimination under Title VII. *See Alcivar v. Wynne*, 268 Fed.Appx. 749, 753 (10th Cir.2008).

The determination of exhaustion of administrative remedies is not an aspect of a substantive claim of discrimination. *See Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003), *citing Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002). Consequently, this Court does not presume the truthfulness of the complaint's factual allegations, but rather, has wide discretion to consider documents outside the complaint, to resolve disputed jurisdictional facts under Rule 12(b)(1). *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). The Court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Id*.

**Procedural History**

The City hired Garcia on April 1, 2009 for an entry-level position as an Operations Technician Trainee I. On September 29, 2019, Garcia filed an Intake Questionnaire with the EEOC.[2] On December 14, 2010, Garcia filed a Charge of Discrimination ("the Charge") with

---

Court, in clear violation of Fed.R.Civ.P. 15(a)(2). Consequently, this First Amended Complaint was not considered by the Court in its analysis herein, and because the pleading fails to conform with Rule 15, it is hereby **stricken.**

[2] Garcia has provided only the first page of this "Equal Employment Opportunity Commission Intake Questionnaire" ("Intake Questionnaire"), as Exhibit 1 to her response brief. This page contains no factual information to support Garcia's claims in this matter. It merely contains "Personal Information," such as her name and address; contact information; a statement that she believed she was discriminated against by her employer, the City of Farmington; "Organization Contact Information" about the City of Farmington; and some general

2

the New Mexico Department of Workforce Solutions, Human Rights Bureau. In this Charge, attached as Exhibit A to the City's motion, Garcia checked four boxes, indicating that discrimination by the City against her was based on sex, national origin, age and retaliation. In the box labeled "Date(s) Discrimination Took Place," she indicated that the earliest discrimination took place on April 1, 2009; that the latest took place on October 20, 2010; and that this was a "continuing action." In the narrative section of the Charge, Garcia stated:

> On 04/01/09, I began my employment as an Operator Technician Trainee I. When I was hired, I was told that I would be promoted quickly and that my wages would increase. I have since completed my probation period and I have not been promoted. In order to be promoted to the next level, I have to take a technical test. I have been told that the test has not been written up and that I'm not eligible until 2011. I know of a male who was given the test and has been promoted to Operator Technician I. I have complained to Human Resources, and filed a grievance through the Union. I also complained to Human Resources about being called a "Mexican" by a co-worker. I feel that I am being retaliated in that I am given different assignments and harassed.
>
> I believe I am being discriminated against because of my gender-female, national origin Hispanic, retaliated against and age (55). These are violations of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act.

(Deft.'s Mot. to Dism., Ex. A).

After Garcia declined mediation, the City responded to Garcia's Charge on January 31, 2011, by letter sent to the EEOC (*Id.*, Ex. B). On November 2, 2011, the EEOC sent Garcia a predetermination letter, inviting her to submit additional information to support her claims. (*Id.*,

---

employment data, such as the date she was hired and her initial job title. In the response brief, Garcia's counsel describes information supposedly included in subsequent pages of this questionnaire. The Court will not rely upon such statements of counsel as a substitute for reliable proof in the record.

Garcia's counsel also represents that the Intake Questionnaire made reference to a "Complaint to HR dated 6/15/10", the contents of which are apparently attached as Exhibit 2 to Garcia's response brief. Garcia's counsel states that this Complaint was provided to the EEOC, at the same time she submitted the Intake Questionnaire -- on September 29, 2010. Once again, without proof in the record that the EEOC was in receipt of the document which is Exhibit 2 in this lawsuit, the Court is unable to accept representations of counsel as being probative in this matter. For these reasons, the Court does not consider either of Garcia's exhibits as containing any substantive proof, for purposes of Defendant's motions, as to what the EEOC had before it, prior to Garcia's filing of her Charge in December 2010.

3

Ex. C). Garcia elected not to respond. On January 23, 2012, the EEOC dismissed Garcia's Charge and closed her file, issuing a determination that stated, "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (*Id.*, Ex. D). This document informed Garcia of her right to appeal the EEOC's determination by filing a lawsuit in federal or state court. The next day, on January 24, 2012, the New Mexico Department of Workforce solutions issued Garcia an Order of Non-determination. (*Id.*, Ex. E). Garcia filed her Complaint for Damages from Title VII Gender Discrimination, Retaliation and Prima Facie Tort in this Court on April 13, 2012 (Docket No. 1).

At issue in this motion is the jurisdiction of the Court over Counts II-IV of the Complaint. Count II is entitled "Violations of Title VII Gender Discrimination Hostile Work Environment." This count alleges that the City discriminated against Garcia by failing to promote her because of her gender, assigning her job duties and responsibilities different from those assigned to men, refusing to provide Garcia the same training opportunities provided to men, treating Garcia in a disparate manner with respect to addressing her complaints of discrimination, creating a hostile work environment because Garcia happened to be female, and investigating Garcia's complaints of discrimination and retaliation in a cursory manner. (Compl. ¶ 56). Count II further alleges that the gender discrimination that Garcia suffered was sufficiently severe and pervasive to alter the terms and conditions of her employment. (*Id.* ¶ 57). Further, it alleges that the gender discrimination she encountered created an abusive work environment where she was constantly belittled, ignored, insulted, screamed at, humiliated, and treated in a harassing hostile fashion. (*Id.* ¶ 58).

Count III is entitled "Violations of Title VII Retaliation." This count alleges that Garcia engaged in federally protected activity when she reported discriminatory treatment and the

4

hostile work environment to which she was subjected, to the City's HR Department and to her direct supervisor "on a number of occasions." (*Id.* ¶ 61). Garcia alleges that she suffered materially adverse employment actions: denials of promotions, the on-going hostile work environment, disparate job assignments, and training and testing actions of the City. (*Id*. ¶ 62).

Count IV is entitled "Retaliation Hostile Work Environment." This count alleges that the hostile work environment to which Garcia was subjected was borne out of a retaliatory animus stemming from Garcia's complaints to the City HR Department and her supervisors; that her co-workers openly made comments about their retaliatory animus and their determination to force her out of the workplace; that this retaliatory animus revealed itself in her forced isolation and alienation, and the steady stream of insults and humiliating circumstances to which she was subjected through general retaliatory workplace conduct by her co-workers, including her supervisors. (*Id*. ¶ 67). She alleges that this retaliatory conduct was sufficiently severe and pervasive to create a hostile and abusive work environment for Garcia.

**Title VII Overview**

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharge[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As noted above, Title VII claims must be administratively exhausted before being brought in federal court. To exhaust administrative remedies, an individual claimant must (i) timely file a charge of discrimination with the EEOC, setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d

1321, 1326 (10th Cir. 1999); 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1).  Exhaustion of administrative remedies serves two important policy goals of the statute:  (1) it puts an employer on notice of a violation prior to the commencement of judicial proceedings; and (2) it facilitates internal resolution of the issue rather than promoting costly and time-consuming litigation.  *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  The Tenth Circuit "liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."  *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).  "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel."  *Mitchell v. City and County of Denver*, 112 Fed.Appx. 662, 667 (10th Cir. 2004).  "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]"  *Jones v. United Parcel Serv.*, 502 F.3d at 1186.

**Legal Standards for Exhaustion of Administrative Remedies**

The first step to exhaustion is the filing of a charge of discrimination with the EEOC.  As noted above, Garcia filed her EEOC Charge in December 2010.

The next step in determining whether Garcia has exhausted her administrative remedies is to determine the scope of the allegations raised in her EEOC charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that

6

can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & County of Denver*, 414 F.3d at 1274.

### 1. Retaliation: Each Discrete Incident Must be Exhausted

Under current law, Garcia's Charge must contain discrete facts concerning the discriminatory and retaliatory actions underlying each claim. This follows from the rule that "each discrete incident" of alleged discrimination or retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d at 1210 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)[3].

As the City correctly argues, any adverse employment actions occurring after Garcia submitted her administrative charge in December 2010, would not fall within the scope of her charge. *Jones v. United Parcel Serv.* 502 F.3d at 1186. If a plaintiff wishes to sue for retaliation that occurred as a result of filing her first EEOC charge (or for some subsequent protected activity), she must file an additional EEOC charge and exhaust her administrative remedies with respect to this allegation. *See Duncan v. Manager Dept. of Safety*, 397 F.3d 1300, 1314 (10th Cir.2005). The rationale for this position is that "an act which occurs subsequent to the filing of the formal EEOC charge would not be included in the scope of the administrative investigation and would constitute its own unlawful employment practice for which administrative remedies must be exhausted." *Gerald v. Locksley*, 849 F.Supp.2d 1190, 1216-17 (D.N.M. 2011)(internal citations omitted).

---

[3] Prior to 2003, under the "continuing violation" theory, the Tenth Circuit recognized a limited exception to the "exhaustion rule for Title VII claims when the unexhausted claim is for 'discrimination like or reasonably related to the allegations of the EEOC charge.'" *Simms v. Oklahoma ex. rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d at 1327 (*internal citations and quotations omitted*). The Tenth Circuit "construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing." *Simms*, 165 F.3d at 1327 (citing *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 797, 799 (10th Cir. 1997). Since 2003, Tenth Circuit decisions have "unambiguously recognized *Morgan* [*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)] as rejecting application of the 'continuing violation' theory." *Martinez v. Potter*, 347 F.3d at 1211.

7

## 2. Hostile Work Environment: Continuing Violation Doctrine Applies

A different rule applies to hostile environment claims, for which "the continuing violation doctrine remains viable." *Semsroth v. City of Wichita*, 304 Fed.Appx. 707, 722 (10th Cir. 2008). An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)(quotations omitted). Under *Morgan*, a series of events that constitute a hostile environment claim are considered one unlawful action. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Nat' R.R. Passenger Corp. v. Morgan*, 536 U.S. at 115 (internal citations and quotations omitted). An "unlawful employment practice" that constitutes a hostile work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. In contrast to discrete acts, a single act of harassment may not be actionable on its own. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Accordingly, so long as one of the incidents included within the claim of hostile environment occurred within the prescribed time limit, other conduct that occurred outside of the proscribed time period, but contributing to the hostile work environment, is not time barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 105. In *Morgan*, the Supreme Court stated that a series of alleged events comprises the same hostile environment where the pre- and post- limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers. *Id.* at 120.

**Legal Analysis**

Having reviewed the contents of Garcia's EEOC Charge, the Court finds that Garcia has met the minimum requirements by submitting "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Her actions clearly manifest the intent to activate the administrative process, and the EEOC subsequently began this process by sending Garcia a predetermination letter and a letter of dismissal informing her of her right to appeal the EEOC's determination. On these facts, the Court concludes that Garcia fulfilled the administrative filing requirement. What remains to be determined is the scope of her exhausted allegations in her EEOC Charge, for purposes of determining the scope of her claims in this lawsuit.

   1.   **Retaliation**

Title VII explicitly prohibits retaliation against any employee who brings charges of discrimination. *See* 42 U.S.C. § 2000e-3. The Court finds that Garcia has exhausted her administrative remedies for her retaliation claims as contained in Count III. Given Garcia's factual allegations in the EEOC Charge, and the fact that she checked the box in the EEOC Charge for retaliation, an administrative investigation of Garcia's retaliation claims could reasonably be expected to follow the charge of discrimination. *See MacKinzie v. City & County of Denver*, 414 F.3d 1274. Specifically, Garcia made discrete factual allegations that she had complained to the City Human Resources Department and filed a grievance through the Union; that although she had completed her probation period, she had not been promoted; that although a male was given a test and promoted to Operator Technician I, she was denied the opportunity to take a pre-promotion test until later -- in 2011; and, that she was being retaliated against, as

shown by the fact that she was given different assignments and harassed. (*See* Deft.'s Ex. A). These allegations should have triggered an inquiry into whether or not Garcia was retaliated against for participating in protected activity.

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. at 114. Garcia's allegations in her EEOC Charge have exhausted the following discrete actions, sufficient for inclusion in this federal court lawsuit: failing to promote, giving her different assignments and testing opportunities from those given to her male co-workers; and subjecting her to harassment. It must be noted, however, that only those discrete, easily designated actions, which occurred between the time she engaged in her protected activity and filed her EEOC Charge in December 2010, are within the scope of the Charge. No alleged acts of retaliation after that date have been properly exhausted, and consequently the Court has no jurisdiction over such allegations, given Garcia's failure to file any additional EEOC charges. It is clear that no allegations subsequent to December 2010 Charge have been exhausted.

    2.  **Hostile Work Environment**

At this juncture, the Court must decide whether or not Garcia's EEOC Charge can be fairly construed to include hostile work environment claims, sufficient for exhaustion purposes. To determine whether her hostile work environment claims in this lawsuit are reasonably related to the Charge, the Court must first examine the language of the Charge itself.

Garcia checked the box in the EEOC Charge for a "continuing action." In the same section, she indicated that discrimination took place from April 1, 2009 until October 20, 2010. At page 3 herein, the Court has quoted verbatim the factual allegations made by Garcia in her

Charge. As noted on page 3, Garcia checked four boxes, including boxes indicating that discrimination by the City against her was based on sex and retaliation. In the narrative section, Garcia stated that she complained to Human Resources and to the Union about gender discrimination and about a racial comment or comments. She states that she was retaliated against, in that she was given different assignments and that she was harassed. Although Garcia does not elaborate on the harassment she experienced after complaining about alleged gender and racial discrimination, use of the term "harassment" connotes "words, gestures and actions which tend to annoy, alarm and abuse (verbally) another person." *Black's Law Dictionary* 717 (6th Ed.1990). Discriminatory intimidation, ridicule and insult, sufficiently severe or pervasive to create an abusive working environment, could all be covered by the term "harassment." Furthermore, the designation of different work assignments to Garcia, if done for purposes of discrimination, could be considered an unlawful employment practice also contributing to a hostile work environment.

Reading the Charge liberally, the Court concludes that Garcia's Charge should have triggered an inquiry into whether or not Garcia was being subjected to a hostile work environment. It contains sufficient factual allegations of treatment in manner or degree, pursuant to the legal standard discussed above, sufficient to allege a hostile work environment. The Court finds that Garcia has exhausted her administrative remedies for her hostile work environment claims as contained in Counts II and IV.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendant's Memorandum Motion to Dismiss Plaintiff's Sex Discrimination and Retaliation Claims (Docket No. 12) is **denied.** Specifically, the Court concludes that Garcia has exhausted her administrative remedies for her

retaliation claims as contained in Count III, subject to the express limitation that only pre-Charge retaliatory conduct by the City has been exhausted (i.e., conduct that occurred prior to Garcia's filing of the EEOC Charge on December 14, 2010). Furthermore, the Court concludes that Garcia has exhausted her administrative remedies for her hostile work environment claims as contained in Counts II and IV. Accordingly, Counts I, II, III, IV and V remain in this lawsuit.

**IT IS FURTHER ORDERED THAT** Plaintiff's First Amended Complaint for Damages from Title VII Gender Discrimination, Retaliation, Breach of Settlement Agreement, and Prima Facie Tort (Docket No. 31) is hereby **stricken from the Court's record**, due to Plaintiff's failure to follow Fed.R.Civ.P. 15 (a)(2).

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**